Good morning. May it please the court, Mr. Scott Curry, 1999, invented a method in the system for allowing fitness users at fitness centers to enter data into computer terminals, computer portals, have that data handled by a server, and allow them to access it from non-fitness center sites such as at home. The patent examiner finally rejected four claims residing in three claim sets, and the board affirmed these four rejections. There were other rejections which were reversed. And these rejections cited on three different content, three different limitation types, content, location. What were the differences that permitted some of the claims to issue? They were relating to different aspects regarding to automatically adjusting users and user groups according to their performances on the fitness reports. And it might help just to paraphrase Claim 81 here, where Claim 81 recites wellness-related databases accessed from sponsored and non-sponsored portals, where the sponsored portal is sponsored by and located at a fitness center, and the non-sponsored portal is accessed through the internet. The actual claim is quite long. And Claim 85 is more specific and includes fitness-related data selected from at least one of the workout plans, workout goals, weight training plans, weights, and repetitions. And this claim was rejected over Baker, which shows computer terminals which have their content varied depending on whether the terminals are authorized or not, like for security or pornography screening purposes at schools. And regarding the content issue, the patent board said that this was non-functional descriptive material. And we agree that in part it's non-functional technically, although there's a functional relationship between the content and the claims which were effectively allowed by the board. The real question is whether these non-technically functionally related claim limitations should be given patentable weight. And the solicitor cited several cases which are really not on point. They were all related to article claims for one thing. None of the cases cited related to printed matter used in method claims. For example, in Raina Gai, it was a kit claim which had some instructions printed on a piece of paper and this was not allowed. In Gulak, it was some printed matter printed on a ring. And in Gulak, the court noted that the caution against the illiberal use of 103 rejections in printed matter cases, even for these article claims. And it referred back to the CCPA, who was weary of this inciting in Ray Royko case. And this court, in Ray Lowry, which was a data structures case, again, an article claim. Again, caution against the liberal use of 103 rejections in printed matter cases. And we don't think that the use of these printed matter cases is appropriate or that the citing is not appropriate by the solicitor as they're really not on point. And as a policy matter, these cases should not be used against electronic content because they can be used to effectively circumvent the State Street cases and the more recent business method patent cases. If the patent board is allowed to prevail, they can just simply read out or give no patent away to any type of content differences in business method claims. They just strike them out and see what's left and what's left may be just a computer system. But isn't the question whether one of skill and the art would perceive the ease of converting from a school setting to a fitness center setting? The question is, the patent board did not say that the other references taught or suggested. Just the field of use, as they were saying. Yeah, the field of use, as I understand it, is a licensing term. And statement of intended use is more of the patentability term. And that regarded the location limitation. And again, there were no cases cited to say that a location cannot be a limitation in a method claim. Every case cited by a solicitor was an apparatus claim. And, you know, in some businesses, the most three important limitations are location, location, location. And, you know, which is important in business as a practical matter but may not be technically functionally limiting. Jay, let me, getting back, I think you were discussing earlier the, I guess what we call the so-called printed matter rejection. And in that regard, I mean, what we have here is the limitation in the claims that databases used in the invention contain, I guess it's fitness or wellness-related data is what's used. Yes. Now, it's true that in Ray Lowry, the court cautioned against indiscriminate use of the printed matter exception. And we explained what we meant in Gulack. But we did say, and I'm wondering if you would comment on this, in Lowry we did say, Lowry's ADOs, what was involved there, do not represent merely underlying data in a database. ADOs contain both information used by application programs and information regarding their physical interrelationships within a memory. I was struck by that because my first reaction, and tell me if it's wrong, is that, in fact, the fitness and wellness data is akin to what was referenced here as merely underlying data in a database. Certainly.  Yeah, and as I understand, Lowry, the decision to make the data structures, the ADOs, patentable, which were, you know, even article claims, I understand it, did not say that they would not consider content to be a limitation in a use case. And it wasn't, I think, even the comment about the database composition was really dicta. It wasn't necessary to reach that. They just noted, the court noted that this wasn't the case. But it seems, and I'm always hesitant, I will acknowledge to you in going too far when it's a question of exactly how a machine works, but we did seem to be saying in Lowry that the ADOs were instrumental in the operation or had a role in the operation of the machine, if you will, or the software, whatever. But that's not the case here with respect to the fitness and wellness data. It's just, it's data that can be retrieved, as I understand it, by someone accessing either at a portal at a mall or a fitness center or from their home computer. Yes, in one point, the mall reference, this was limited during prosecution to be the fitness center in order to obtain allowance. I noted that the solicitor pointed out that in the early drafts and the specifications, it could have been in a different location. And the Lowry functionality was required because this was an article claim. This was a device. We're not claiming some workout data stored on a disk and then coming before this court and saying, here we got Mr. Curry's workout data, we want to patent on this fluffy disk. We're saying that information transferred between computers can be, should be given patentable weight in analyzing the patentability of the claim. But isn't printed matter only patentable if it really possesses some kind of functional relationship with the substrate? I think this is what Judge Shaw was just saying. If there's some interaction between that data and the way the system works, yes. But just to say that you get a patent on each different form of data is. We're not seeking a patent on each sort of data. We're saying that it should be evaluated by the patent office as a limitation when evaluating the patentability of the claim. They're reading it out. They're giving it no patentable weight and then evaluating what's left. We're not saying, look, we want, we're claiming fitness data on a disk. But isn't it obvious to one that you can store fitness data or you can store sports related scores? You can store any kind of data. Anyone of skill in the art, you don't even have to be very skilled in the art to recognize that there are data storage capabilities and retrieval capabilities. Yes. But in the 1999 filing date of Mr. Curry, this was an early filing date in this case, which is why the patent office has only been able to come up with a nutritional dispensing device. It's a device dispensing device. This invention allows the placement of kiosk computer portals in fitness centers to be accessed over the Internet from another location. And, you know, if this is so obvious, where is the prior art? There is none. It should be judged over the prior art. And there is none regarding that. Well, there is prior art. There's Baker. And then there's the question of whether you could modify Baker to render this obvious. With the teaching of Mr. Curry, you could. Well, why wouldn't one of skill in the art know you can store any kind of data just the same way Baker does? Well, why wouldn't one skill in the art know that you could have placed these kiosks and fitness centers well ahead of Mr. Curry and done so? Mr. Curry had 4,000 users before his company succumbed to the dot-com problems. I think that the claim limitation should be given patentable weight and then examined. The patent office is not really saying that Baker teaches placing kiosks and fitness centers and allowing people to track their fitness over the Internet based on what they entered at the fitness center. They're saying we're striking the words fitness-related data, workout data, sponsored portals, location. And what we're left with is a portal on the Internet and then they could, in fairness, if that's what they've done, then they can reject it almost over anything. We think that given the business method cases like State Street, that functionally related limitations should be given patentable weight. But State Street said nothing about patentability. It was a question of eligibility, right? Yes. Very different concepts entirely. Yes. And if the patent office had applied the same procedure to State Street, the patent need not be issued. I addressed this in the brief where I basically struck out all the content type of limitations in State Street. State Street was just a computer. It flung bits around, as Mr. Curry's system does, and these bits represented financial data. If the patent office is allowed to prevail, the next time around with a State Street type case, they could simply strike out the financial data, say, well, this is just content. It could be music or literature, using their analogy. And that would be entirely permissible under State Street because State Street was not addressing patentability. It was only discussing whether that subject matter itself was eligible for patenting. Very different concept from prior art applications. And there will never be a 101 case if the patent office is allowed to strike out all the business. No, no, no. We have something worthy of a patent at all. Yes. The statutory subject matter question of whether business methods are patentable will not be reached because the patent office can strike at every single business limitation. No, it's reached first. They wouldn't even proceed to a patentability assessment if you hadn't first passed the eligibility. Obviously, they considered you eligible. They properly applied State Street to your case. And then they looked to see if it was patentable, and that's why we're here. Yes. And they achieved the same result. No, the result, well, actually, no. You got a couple claims, didn't you? That's out of the user group, a totally different aspect of this. Okay. Perhaps we could hear from Mr. McManus and reserve the remainder of your time. Thank you. Thank you. Mr. McManus. May it please the Court. The Court has focused in on the salient issue in this case, which is it's not whether this is a method or apparatus claim. It's not whether the particular limitations are business method limitations. The issue is what does claim anyone claim, and is it obvious? And as this Court, in directing its questions to Mr. Taylor, seems to indicate, this is a very broad claim. All claim anyone says is I have data stored at one point, I'm going to access it from another point, and I'm going to give you differing levels of access depending on whether or not I know what computer you're using, whether I can identify that computer. And that's all taught in Baker. Baker teaches us that you can use, if you look through Baker, there's up to six slides. Why isn't Baker anticipatory then? Well, it doesn't teach explicitly wellness-related data, but what it does teach is that the particular type of data that If you are setting aside the type of data as a use, therefore not an acknowledgeable limitation, why isn't it anticipated? Well, I think the Board took a very strict approach to it in that Baker doesn't teach the particular type of data, but what Baker teaches is that the type of data is irrelevant to the functioning of the system. Baker teaches that you can use his data access system, and this is a method of applying it, but applying it in a way that would have been fully within the knowledge of the art. If the wellness data would be within the limitations taught by Baker, why not anticipation? I can't answer that question. All I know is that the examiner's objection was on 103 because he recognized that the particular type of data wasn't explicitly in there. But what Baker does teach is using the data access system for education-related data, pornography, violent material, historical information, five different types of data as well as images with no impact on how the system functions. And that was the rationale behind the Board's decision here. The Board said, listen, we know in the art how to store data at a database. To tell me what kind of data it is at that point doesn't get you over the art. It would have been obvious once I knew to store music on a disc to tell me what kind of particular music you were going to store. Well, so here, once Baker teaches us how to store information on a database and access it from another point with varying levels of access to tell me what kind of data you're going to use doesn't make it patentable, and this sort of goes to your point, Your Honor, in the questions, which is whether I use it for sports-related data, financial data, it doesn't matter. There's been no showing here that this particular type of data changes the way that they're implementing the system that Baker teaches. So, too, the location. Baker teaches us that you can deploy the system at your home. You can deploy the data access system in a school. You can deploy the data access system in a business. It doesn't matter where the portal that you're accessing it from is, simply that you can put it here and I can put the data there and you can, using the Internet, access it. So, too, Baker teaches the sponsorship limitation. The board construed that limitation correctly, that based on the specification here for Mr. Curry, that imparts that differing level of data access. If I know your computer, you get one level of data access. If I don't, you get a different. And that's exactly what Baker teaches. You can differentiate between which data an individual can access, depending on whether or not you can identify the computer that's doing the accessing. And so what we have here is a clear case of obviousness, given that once, and actually going back to Claim 1, it's also important to point out what Claim 81 doesn't say. There's nothing being done here with the data. All it says is I have wellness-related data on a database. There's no claim element here requiring data to be put into a database. There's no claim element requiring that something be done to the data. It's simply being stored, and an individual is accessing it, with differing levels of access, as Baker teaches. So, at the end of the day, this is a claim to Baker. This is a data access system. If the panel has any more questions, I'll yield my time. Thank you. Let me ask a question which is essentially the same question, I think, as Justerator did. I just want to see how you analyze this problem of the anticipation versus obviousness issue. I mean, if I have a method for storing and retrieving the works of Tolstoy, and that's in the prior art, and an application comes in for the same basic method for storing and retrieving the works of Stendhal, is the second obvious over or anticipated by the first in the approach taken by the PTO? Obviously not Stendhal's French. Tolstoy's Russian. There we are. I think the approach may vary by examiner. What do you think is the right way to look at it? In a sense, it's a silly question because we end up obviously at the same point. But analytically, I'm not sure. I'm having the same trouble that Judge Rader's question raises, which is what exactly is the role of the written materials ingredient, and how does the Board look at that? Is it just a nonentity such that it just doesn't exist, and therefore you would assume anticipation, or is it a factor which doesn't contribute in most instances meaningfully to patentability and therefore is very easy to get over by an obviousness analysis? Your Honor, I obviously can't speak to every fact situation, but on the whole it's the latter. It's more of a 103 approach. If you look at the interim guidelines to subject matter eligibility that the PTO has promulgated and that have been incorporated into the NBEP for over ten years, when you have, and I assume your claim to the Tolstoy scenario is computer-based, such as this one, when you have a claim that differs over the prior art simply in the particular type of data that you've recited that you're storing, unless you can show some kind of functional relationship, we're going to treat it as non-functional descriptive material. It's not that they're reading it out and ignoring it. They recognize it as a limitation. But in light of the teaching of the art, unless you can tell me that your information is being used to sort of take what's already in the art and elevate it above the art, then simply reciting a claim to the information isn't going to get you where you need to be. This is sort of what the discussion in Lowry, the distinction between claiming the data as opposed to claiming, in that case, attribute data objects, which were more than just data. They were physical structures that changed the way the data was stored, improved the functionality of the system, really changed it from what was already known in the art. And there's no taking it back to Claim 81. There is nothing in Claim 81 about using the data or somehow storing it differently. You're just simply storing it. Any further questions? Thank you, Mr. McManus. Mr. Taylor, you still have a little over a minute. Thank you. Mr. McManus noticed that this early claim was broad, and that's because it was an early claim, it was an early invention, and there's no patent prior art found that dealt with putting computer portals in fitness centers and allowing people to view it at home. As a practical matter, there is now. In Claim 81, the reason that function was argued in the brief was that we can argue function and advantage all we want. We don't have to put all these function and advantages into the language of the claim. Second to last here. The written material in current commerce takes the place of electronic communication, and if the board is allowed to prevail, any kind of different information sent in a method claim is stricken out and given no patentable weight. It's not analyzed over the prior art. It's given no patentable weight, and this is going to be equated with music and literature, according to the solicitor's analogy. I would like to close just by reading something from Gulag. If I can find it here. It says that differences between an invention and the prior art cited against it cannot be ignored merely because those differences reside in the content of the printed matter. Under Section 103, the board cannot dissect a claim, excise the printed matter from it, and declare the remaining portion of the mutilated claim to be unpatentable. Here, the real argument is not that Baker teaches our claim. It's that Baker teaches our claim after the claim has had the material excised and the mutilated claim has been examined. If the patent board hadn't raised this nonfunctional material argument repeatedly, we wouldn't be arguing it. If they hadn't said, we give no patentable weight to this, we wouldn't be arguing it. And there's very little case law on the functionality, because as I understand it, nonfunctional material isn't probably functional. Nonfunctional devices probably aren't made, patented, litigated, which is why there's very little case law. Thank you, Mr. Taylor. I think your time's expired. Oh, I'm sorry. Thank you very much. Thank you very much.